IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Circuit Court Case No. 20-17009

JOHN PARZIALE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

PLAINTIFF-APPELLANT,

v.

HP, INC.,

DEFENDANT-APPELLEE.

OPENING BRIEF FOR PLAINTIFF-APPELLANT JOHN PARZIALE

APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
DISTRICT COURT CASE NO.: 19-CV-05363-EJD
(Honorable Edward J. Davila)

**LAW OFFICES OF TODD M. FRIEDMAN**
Todd M. Friedman, Esq. (SBN 21675)
Adrian R. Bacon Esq. (SBN 280332)
Meghan E. George, Esq. (SBN 274525)
Thomas E. Wheeler (SBN 308789)
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 323-306-4234
Fax: 866-633-0228
Email: tfriedman@toddflaw.com

*ATTORNEYS FOR APPELLANT*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT..................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW.................................2

STATEMENT OF THE CASE.......................................................................3

STATEMENT OF FACTS............................................................................5

   I. Appellant's Second Amended Complaint.........................................5

   II. The District Court's Grants-In-Part and Denies-In-Part HP's Motion to Dismiss The First Amended Complaint..................................................9

   III. The District Court Grants Judicial Notice Of An Unpled Website And Grants HP's Motion to Dismiss The Second Amended Complaint ...............12

SUMMARY OF THE ARGUMENT .......................................................15

ARGUMENT............................................................................................17

   I. The District Court Erred In Granting HP's Motion To Dismiss Under Rule 12(b)(6)..........................................................................................17

     A. Standard of Review.......................................................................17

     B. Legal Framework for Dismissal Under Rule 12(b)(6)............................17

     C. The District Court's Taking Judicial Notice Of Store.hp.com Was In Error And Undermines The Entire Opinion .................................................18

     D. Parziale Has Adequately Stated A Claim Under FDUTPA ...................21

       1. Parziale Has Pled An Injury That Is Substantial.................................25

       2. Parziale Has Pled A Lack Of Countervailing Benefits.........................26

       3. Parziale And Consumers Could Not Reasonably Avoid The Harm Caused By HP .......................................................................................29

**4. The Only Disclosure To Parziale Was To "Please use HP ink cartridges for best results" Which Does Not Allow A Consumer To Make A Free And Informed Decision** ........................................................30

**5. Even The Language Improperly Considered By The District Court Did Not Allow A Consumer To Make A Free And Informed Decision** ........................................................................................................32

**E. Parziale Has Adequately Stated A Claim Under The CFAA** .................35

**F. Parziale Has Adequately Stated A Claim For Trespass To Chattels** .....39

**CONCLUSION**..................................................................................................42

**STATEMENT OF RELATED CASES**...............................................................44

**CERTIFICATE OF COMPLIANCE PURSUANT TO**.....................................45

**CERTIFICATE OF SERVICE** .........................................................................46

# TABLE OF AUTHORITIES

## Cases

*Aledlah v. S-L Distribution Co., LLC*, No. 20-CV-00234-JSC, 2020 WL 2927980 (N.D. Cal. June 3, 2020) .............................................................................. 19, 20

*Amer. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957 (D.C. Cir. 1985) .............................29

*American Financial Services Ass'n v. F.T.C.*, 767 F.2d 957 (D.C. Cir. 1985)........23

*Anderson v. Apple Inc.*, No. 3:20-CV-02328-WHO, 2020 WL 6710101 (N.D. Cal. Nov. 16, 2020) ....................................................................................................33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................18

*Association for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986 (9th Cir. 2011) ..............................................................................................................18

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ......................................................18

*Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915 (N.D. Cal. 2013) ........................28

*Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084 (M.D. Fla. Aug. 11, 2015), report and recommendation adopted, No. 3:14-cv-01229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015) .................. 14, 24

*Davis v. Powertel, Inc.*, 776 So.2d 971 (Fla. Dist. Ct. App. 2000) ........................22

*Day v. Le–Jo Enterprises, Inc.*, 521 So.2d 175, 178 (Fla. Dist. Ct. App. 1988) .....22

*Drum v. San Fernando Valley Bar Assn.*, 182 Cal.App.4th 247 (2010) .................23

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058 (N.D. Cal. 2000).. 11, 40, 41

*F.T.C. v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010)..............................................29

*Fed. Trade Comm'n v. Vylah Tec, LLC*, No. 17-cv-228-PAM-MRM, 2019 WL 722085 (M.D. Fla. Jan. 9, 2019)........................................................................24

*Hodges v. Harrison*, 372 F.Supp.3d 1342 (S.D. Fla. 2019) ...................................21

*In re Apple & AT & TM Antitrust Litigation*, 596 F.Supp.2d 1288 (N.D. Cal. 2008) ................................................................................... 38, 39, 40, 41

*In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434 (N.D. Cal. 2018), *on reconsideration in part,* 386 F. Supp. 3d 1155 (N.D. Cal. 2019) . 38, 42

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015).................................28

*In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) . 11, 28

*In the Matter of Int'l Harvester Co.*, 104 F.T.C. 949 (1984) ........................... 29, 35

*Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003).........................................................39

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018).....................19

*Klein v. Chevron USA, Inc.*, 137 Cal. Rptr. 3d 293 (Ct. App. 2012).......................28

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ......................................26

*Lombardo v. Johnson & Johnson Consumer Companies, In*c., 2015 WL 5025466 (S.D. Fla. Aug. 12, 2015)...............................................................................22

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) .............................35

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .......17

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)................................................ 17, 19

*Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F.Supp.2d 1218 (S.D. Fla.2013) .................................................................................................... 22, 23

*Miller v. Nat'l Broad. Co.*, 187 Cal.App.3d 1463 (1986).......................................39

*Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740 (2012) .............................................1

*Orkin Exterm. Co., Inc. v. FTC*, 849 F.2d 1354 (11th Cir.1988) ......... 29, 30, 31, 32

*Parziale v. HP, Inc.*, 445 F. Supp. 3d 435 (N.D. Cal. 2020)............................ 10, 40

*Pincus v. Speedpay, Inc.*, 161 F.Supp.3d 1150 (S.D. Fla. 2015).............................22

*Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090 (Fla. Dist. Ct. App. 2014) ............................................................................................ 23, 25, 26

*S.D.S. Autos, Inc. v. Chrzanowski*, 976 So.2d 600 (Fla. Dist. Ct. App. 2007) ........22

*Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489 (Fla. Dist. Ct. App. 2001) ........................................................................................23

*San Miguel v. HP Inc.*, 317 F.Supp.3d 1075 (N.D. Cal. 2018) .................. 11, 37, 40

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000) ..............................................28

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).........................18

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) ...........................................36

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F.Supp.2d 1314 (M.D. Florida, 2007).............................................................................................22

*United States v. John*, 597 F.3d 263 (5th Cir. 2010) ................................................36

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) .............................22

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009).................17

**Statutes**

28 U.S.C. § 1291 ........................................................................................................1

28 U.S.C. §1331 .........................................................................................................1

28 U.S.C. §1367 .........................................................................................................1

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et. *seq.* ........................... passim

Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201 *et. seq.* passim

**Rules**

Fed. R. App. P. 4.......................................................................................................2

Fed. R. Civ. P. 12(b)(6)...................................................................................1

Fed. R. Civ. P. 54 ..........................................................................................1

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of California had federal question jurisdiction under 28 U.S.C. §1331, *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740-53 (2012) and supplemental jurisdiction under 28 U.S.C. §1367. In his operative Complaint, appellant John Parziale ("Parziale" or "Appellant") alleged causes of action under the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et. *seq.*, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), F.S.A. § 501.201 *et. seq.*, and for trespass to chattels. (2-ER-10).[1]

This appeal is from the September 29, 2020 Order of the District Court granting Defendant/Appellee HP, INC.'s ("HP" or "Appellee") Motion to Dismiss the Second Amended Complaint (the "Order") with prejudice pursuant to Rule 12(b)(6)[2] of the Federal Rules of Civil Procedure. (1-ER-3–15). The District Court entered judgment for HP and dismissed Parziale's action with prejudice. (1-ER-2). The September 29, 2020 Order was a final appealable order, giving this Court jurisdiction under 28 U.S.C. § 1291. *See* Fed. R. Civ. P. 54(b). Parziale

---

[1] Citations to appellant Parziale's Excerpts of Record are denoted "ER," preceded by the volume number and followed by the page number.

[2] All subsequent references to rules will be to the Federal Rules of Civil Procedure, unless otherwise specified.

filed a timely notice of appeal 14 days later on October 13, 2020. (3-ER-382–384). *See* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did the District Court err in granting HP's motion to dismiss pursuant to Rule 12(b)?

2. Did the District Court err in finding that certain statements create a reasonable expectation that HP would secretly and unilaterally force the dynamic security update on the Class printers to reduce their functionality and value?

3. Did the District Court err in finding that certain statements create authorization for HP to secretly and unilaterally force the dynamic security update on the Class printers to reduce their functionality and value?

4. Did the District Court err in taking judicial notice of a website Parziale did not visit and finding that he relied on statements on that website he did not visit?

## STATEMENT OF THE CASE

Around April 12, 2019, thousands of HP Printer owners in the United States and other countries started experiencing problems and crashes with their HP Printers, since said printers stopped recognizing and accepting third party ink cartridges (i.e. ink cartridges which had not been manufactured by HP, Inc. but were compatible with the HP Printers before April 12, 2019).[3] (SAC, 2-ER-149, 153–154, 161–167). The cause? HP implemented a firmware update that caused thousands of HP printers and non-HP ink cartridges in homes and small offices across the country to fail in unison using its "dynamic security" technology which allows it to push firmware updates to printers without requiring the owners acceptance of the update. (SAC, 2-ER-149, 153–154, 161–167, 174, 177). As a result, Appellant Parziale and numerous other consumers immediately lost the value of any third-party ink cartridges they had purchased and were required to purchase more expensive, proprietary ink cartridges sold only by the saboteur—HP. (SAC, 2-ER-153, 160–61, 168, 171, 173–174, 178).

While such anti-consumer and anti-competitive conduct would seem to be ripe for litigation such as that brought by Parziale under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et. *seq.*, the Florida Deceptive and Unfair

---

[3] Citations to the Complaint all reference the Second Amended Complaint, which is the operative complaint dismissed with prejudice by the District Court.

Trade Practices Act, F.S.A. § 501.201 *et. seq.*, and for trespass to chattels, the District Court disagreed—finding that HP had adequately warned consumers about such intentional sabotage at the point of sale. What masterpiece of legal exculpation justified such conduct?

> "Dynamic security enabled printer. Only intended to be used with cartridges using an HP original chip. Cartridges using a non-HP chip may not work, and those that work today may not work in the future. http://www.hp.com/go/learnaboutsupplies."

(Order, 1-ER-4 (citing Declaration of Ilissa Samplin, Ex. A, 2-ER-118)). The disclaimer provides no explanation of what "dynamic security" is or how HP intends to use it to unilaterally install firmware updates after the fact to devalue consumers' printers. It provides no notice that HP would take the actions it did take. Further, and in reality as pled, Parziale was not even exposed to this vague disclaimer on an unrelated website which the District Court took judicial notice of as discussed below. So, again, what was the expansive disclaimer that made "buyer beware" because HP intended to force them to purchase its overly expensive ink cartridges after it was too late to turn back?

> "Please use genuine HP ink cartridges for best results."

(Order, 1-ER-7 (citing Second Amended Complaint, 2-ER-153)). The District Court erred in finding that the above sentence provided reasonable notice of HP's intent to use "dynamic security" to intentionally damage Parziale and other

consumers' printers unilaterally and without warning or obtaining further consent. For the sake of technology consumers everywhere, the Court should reverse in full the District Court's Order.

## STATEMENT OF FACTS

### I.  Appellant's Second Amended Complaint

Appellant John Parziale brought this action on behalf of himself and all others similarly situated for HP's violations of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et. *seq.*, the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201 *et. seq.*, and for trespass to chattels.  (SAC, 2-ER-173–180).  The case arises out of HP's unilateral and invasive decision to push a firmware update without notice that resulted in Parziale and the Class's printers ceasing to work with non-HP ink cartridges—thus rendering any purchased non-HP cartridges worthless and devaluing the printer.

On or around April 12, 2019, thousands of HP Printer owners in the United States and other countries started experiencing problems and crashes with their HP Printers, since said printers stopped recognizing and accepting third party ink cartridges (i.e. ink cartridges which had not been manufactured by HP, Inc. but were compatible with the HP Printers before April 12, 2019).  (SAC, 2-ER-149, 153–154, 161–167).  HP implemented a firmware update that caused thousands of HP printers and non-HP ink cartridges in homes and small offices across the

country to fail in unison. (*Id.*). HP's update froze the printers by preventing them from communicating with certain third-party inkjet cartridge microchips, through an undisclosed firmware push that HP implemented using Dynamic Security technology. (SAC, 2-ER-167, 174, 177). The frozen printers displayed a message that the ink cartridges were "depleted" and "must be replaced" as well as also stating that there was a "cartridge problem" and that consumers should "remove and reinstall the indicated cartridge, making sure it is correctly installed." when that was not true. (SAC, 2-ER-155–159). Plaintiff lost time and money because his printers stopped working. (SAC, 2-ER-160, 177).

Prior to the forced firmware update, HP did not disclose to Parziale or other customers that it would be retaining the right to modify the functionality of their devices or that it would do so through an intrusive unannounced firmware update. (SAC, 2-ER-154–159, 174). Parziale reasonably relied on the understanding that his HP printer would work with third party ink cartridges and refilled cartridges in particular. (*Id.*). Not only did HP not do anything to correct this reasonable understanding, but HP actually made statements to Plaintiff that were misleading and suggested that the problems with Plaintiff's printer, i.e. at the point of sale as well as through error messages, were due to defective or empty cartridges, not due to a firmware update. (*Id.*).

On or about September 12, 2017, Parziale purchased the HP Officejet Pro 7740 printer at issue from an Office Depot located at 5914 Ramona Blvd., Jacksonville, Florida. (SAC, 2-ER-154). On June 6, 2018, Parziale purchased another HP Officejet Pro 7740 online at Amazon.com. (*Id.*). Nowhere at the time of purchase for either printer did Parziale see any representation by HP that Parziale would only be able to use HP brand ink-cartridges. (SAC, 2-ER-153). The only statement on the packaging stated "Please use HP ink cartridges for best results." (*Id.*). This statement did not lead Parziale to believe that he would be able only to use HP brand ink, and in fact gave the opposite impression to reasonable consumers and to Parziale—that HP ink would give the *best* results, but not the *exclusive* results. (*Id.*) (emphasis in original). HP made similar statements on its website, which led reasonable consumers to believe that HP brand ink was not the only alternative, merely the one HP believed was the best alternative. (SAC, 2-ER-154–159).

Regarding the misleading error messages, after intrusively invading Parziale's device, HP sent error messages to his computer that informed Plaintiff that his full ink cartridges were "depleted." (*Id.*). The message misleadingly suggested to Parziale that even though he had inserted a full refilled ink cartridge, that his printer believed that he had inserted an empty cartridge. (*Id.*). The error message did not notify Plaintiff that his ink cartridge had been rendered

incompatible with his printer due to HP's firmware update. (*Id.*). When Parziale attempted to bypass this error message by hiding the error message, he was given another misleading error message, which informed him of a "cartridge problem" but again did not advise him that HP had deactivated his printer's functionality and compatibility with refilled or third party ink cartridges. (*Id.*). Plaintiff experienced a similar misleading message when he attempted to use a third-party ink cartridge with his printer, the message for which misleadingly led him to believe that the cartridge was not correctly installed, instead of having been rendered useless by HP's conduct. (*Id.*).

The result of the firmware push was that HP caused expense to Parziale and other similarly situated users through the following means: 1) rendering existing pre-purchased third party ink cartridges and refill cartridges useless and valueless; 2) forcing users to purchase significantly more expensive ink cartridges of HP brand in order for the cartridges to function in their printers; and 3) devaluing the HP printers of users, by invading and revising the internal firmware and software of the product such that its functionality was more limited and of less value to users and prospective users. (SAC, 2-ER-153, 160–61, 168, 171, 173–74, 178).

HP's unilateral and invasive decision to force the dynamic security firmware update on Class Printers does nothing to improve consumer experiences. (SAC, 2-ER-162). Parizale's and other consumers' printers used and worked successfully

with and had quality printing from third party and refilled ink cartridges for which Parziale and other consumers had a significant benefit due to the lower cost of said ink. (*Id.*) Further, there was nothing that Parziale and Class Members could have done to avoid injury, as they relied on statements on the box and store page that indicated the printers would work with third party and refilled ink cartridges and could not have reasonably anticipated HP's decision to secretly and unilaterally force the dynamic security update on the Class printers to reduce their functionality and value. (SAC, 2-ER-162-63).

Parziale alleges state and federal causes of action on behalf of both a nationwide and a Florida class of HP customers who purchased a Class Printer, which includes a list of several dozen HP inkjet models that were affected by the same Dynamic Security firmware updates as Parziale's printer and are collectively referred to as Tier Two printers or Class Printers. (SAC, 2-ER-164–69).

## II. The District Court's Grants-In-Part and Denies-In-Part HP's Motion to Dismiss The First Amended Complaint

While the Order on the Second Amended Complaint is the one at issue on the appeal, the District Court's published decision on HP's Motion to Dismiss the First Amended Complaint provides important context. On December 30, 2019, HP filed a Motion to Dismiss and/or to Strike Parziale's First Amended Complaint. (2-ER-265–299). Besides the claims present in the SAC, Parziale's First Amended

Complaint included additional claims under the fraudulent and deceptive prongs of the Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201 et seq., the Florida Misleading Advertisement Law, F.S.A. §§ 817.41 et seq, additional sections of the Computer Fraud and Abuse Act, namely 18 U.S.C. § 1030(a)(5)(B)-(C), 1030(a)(2)(C), and 1030(a)(6)(A), and for tortious interference with contract. (3-ER-324–35),

The District Court dismissed these additional claims as well as Parziale's unfair prong of the FDUTPA, but denied HP's motion with respect to Parziale's claim under 18 U.S.C. § 1030(a)(5)(A) and trespass to chattels. (2-ER-186–203). *See also Parziale v. HP, Inc.*, 445 F. Supp. 3d 435 (N.D. Cal. 2020). With respect to Parziale's unfair practice claim, the District Court found that while Parziale had alleged a "substantial injury," he had failed to allege that the injury was not outweighed by a countervailing benefit. (2-ER-193–94). Additionally, the District Court found that Parziale failed to allege that he could not have reasonably avoided the injury because of statements on a support page that the District Court inferred Parziale to have viewed.[4] (2-ER-195). In particular, the statements "HP cannot guarantee the quality or reliability of non-HP cartridges" and that the printer's

---

[4] Parziale corrected this misconception in his Second Amended Complaint. (SAC, 2-ER-155).

firmware "includes dynamic security measures, which may prevent supplies with non-HP chips or circuity from working now or in the future." (2-ER-190–91).

With respect to Parziale's claim under 18 U.S.C. § 1030(a)(5)(A), the District Court denied HP's motion, finding that HP exceeded its authorization by transmitting the firmware update that intentionally caused damage to Parziale's printer and thus, as alleged, violated the statute. (2-ER-198–99) (citing to *San Miguel v. HP Inc.*, 317 F.Supp.3d 1075 (N.D. Cal. 2018) and *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)). With respect to Parziale's Trespass to Chattels claim, the District Court found that Parziale had adequately alleged that HP had exceeded its authority and thus committed trespass to chattels. (2-ER-200–01) (citing *San Miguel*, *supra* 317 F.Supp.3d 1075, *In re iPhone Application Litigation*, *supra* 844 F. Supp. 2d 1040, and *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000)).

After the District Court denied HP's Motion as to the trespass to chattels and 18 U.S.C. § 1030(a)(5)(A) but gave leave to amend in response to its dismissal of the Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201 claims, Parziale filed his Second Amended Complaint which clarified that he had not viewed the support page and provided further allegations regarding the lack of countervailing benefits.

### III. The District Court Grants Judicial Notice Of An Unpled Website And Grants HP's Motion to Dismiss The Second Amended Complaint

Parziale filed his Second Amended Complaint on June 5, 2020, as permitted by the order on HP's Motion to Dismiss the First Amended Complaint. (2-ER-148–180)[5]. HP filed its Motion to Dismiss the Second Amended Complaint on July 17, 2020, arguing that Parziale had stilled failed to plead a countervailing benefit or that the injury was one he could not reasonably avoid under F.S.A. §§ 501.201 and again seeking to dismiss the trespass to chattels and 18 U.S.C. § 1030(a)(5)(A) claims previously upheld by the District Court based on additional evidence submitted through Request for Judicial Notice. (2-ER-93–109).

The District Court granted HP's Motion to Dismiss the Second Amended Complaint in full, including the counts it had previously upheld, and dismissed the matter with prejudice. (1-ER-3–15). First, the District Court denied HP's request to take judicial notice of its printer boxes and a HP support page but granted it with respect to a Wayback Machine[6] of store.hp.com. (1-ER-6–9). Parziale pled that

---

[5] To the extent it is useful, a redline comparing the First Amended Complaint to the Second Amended Complaint was attached to the Declaration of Todd M. Friedman in Opposition to HP's Motion to Dismiss The Second Amended Complaint. (2-ER-52–91).

[6] "The Internet Archive Wayback Machine "is a service that allows people to visit archived versions of Web sites." *See* Internet Archive, Wayback Machine General

his online purchase of the HP Printer was from Amazon.com, not store.hp.com which is a completely separate website.  (2-ER-152).  Parziale does not even mention store.hp.com at any point in his Second Amended Complaint.[7]  Despite this, in considering Parziale's claim under the unfair prong of F.S.A. §§ 501.201, the District Court found that Parziale had relied on a warning on that unvisited storage page which read:

> "Dynamic security enabled printer.  Only intended to be used with cartridges using an HP original chip. Cartridges using a non-HP chip may not work, and those that work today may not work in the future."

(1-ER-10–11).  While the District Court found that Parziale had adequately pled damages and the countervailing benefits prong at this stage, the District Court found that this statement would "allow a reasonable consumer to anticipate any pending harm caused by a printer becoming incompatible with non-HP cartridges" and thus "avoid any impending injury, either by buying a different printer in the first instance, or by not buying non-HP cartridges that might be rendered incompatible in the future."  (1-ER-11) (citing *Casey v. Fla. Coastal Sch. of Law, Inc.*, No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *6 (M.D. Fla. Aug. 11,

---

Information, available at https://help.archive.org/hc/en-us/articles/360004716091-Wayback-Machine-General-Information."  (1-ER-6, FN 3).

[7] Further, his first purchase from the brick and mortar Office Depot predates any webpage visit at all.  (SAC, 2-ER-152).

2015), report and recommendation adopted, No. 3:14-cv-01229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015)).

Turning to the CFAA and trespass to chattels claims that it had already previously upheld, the District Court found that the "warning on the [unvisited] store page put Plaintiff on notice that the printer's dynamic security might render certain non-HP cartridges incompatible with the printer in the future" and that "Plaintiff was on notice of Defendant's ability to interfere with his printer." (1-ER-13–14). By finding that Parziale relied on language on a store page he did not visit in dismissing the claims, the District Court committed clear error in dismissing the previously upheld claims.

Further, even if the District Court were to consider the statements on the unpled webpage, the District Court's ruling that the statement creates a reasonable expectation in a consumer that HP would secretly and unilaterally forcibly install firmware on the Printers at issue which would damage them is a step, leap, and bound past the actual disclosure made. Similarly, the premise that this vague statement means that through purchase Parziale and other Class Members are giving authorization to HP to secretly and unilaterally forcibly install firmware on the Printers that damages the capabilities of the Printers is also stretching the actual disclosure past its language to harm consumers.

Parziale timely appealed on October 14, 2020. (3-ER-382–84).

## SUMMARY OF THE ARGUMENT

Parziale adequately pled claims under FDUTPA, the CFAA, and for trespass to chattels. The District Court erred in considering evidence inappropriate at the pleadings stage—and which itself was actually irrelevant to the Complaint at issue. The District Court further erred in placing the onus on the unsuspecting reasonable consumer to discern the company's nebulous, nefarious intentions in order to protect him or herself—contrary to both the law and spirit of the claims pled in this action.

With respect to FDUTPA, Parziale adequately alleged that he suffered a substantial harm through the loss of value from third-party ink cartridges that were rendered useless through the secretive "dynamic security" update, that there was no countervailing benefits as the third-party ink cartridges printed at the same quality for a lower cost and there were better alternatives available to HP, and that the harm was not one that could be avoided by a reasonable consumer. The incredibly limited disclosure as pled provided no information about "dynamic security" or potential incompatibility. The broader disclosure as improperly considered by the District Court does not even explain what "dynamic security" is or how HP intended to use it to disable consumers' printers—thus preventing a reasonable consumer from anticipating the harm.

With respect to the CFAA, Parziale adequately alleged that the "intentional damage" caused by HP was not authorized even if general access to the printer was authorized. With respect to the trespass to chattels claim, as with the CFAA claim, Parziale adequately alleged that HP similarly exceeded its authorization when it digitally trespassed and caused damage to his printer. Numerous Courts within this Circuit have analyzed this exact issue in the context of damage caused by updates and found that the intentional damage by HP present here through its disabling of functions of its Printers qualifies for a claim under the CFAA and trespass to chattels because of a failure to obtain consent and explicitly disclose, even where companies have made broader and better disclosures than the ones presented here.

While all three causes of action were independently dismissed by the District Court based on its incorporating the unvisited stores.hp.com disclosure language, the reason all three causes of action should be upheld on appeal comes down to the same philosophy. A company needs to adequately and accurately disclose the actions it intends to take with respect to consumers—whether this be to provide a consumer a chance to not do business with them under FDUTPA or in order to obtain necessary authorization under the CFAA or for trespass to chattels. HP chose not to make such clear disclosures and, in fact, purposefully chose to use a "dynamic security" program that is intentionally both secretive and invasive in order to forcibly remove functions from consumers Printers in order to force them

to purchase expensive HP brand ink cartridges. The District Court's Order, if left to stand, only encourages such anti-competitive and anti-consumer behavior. Parziale respectfully requests this Court reverse the District Court in full.

## ARGUMENT

### I. The District Court Erred In Granting HP's Motion To Dismiss Under Rule 12(b)(6)

### A. Standard of Review

A dismissal for failure to state a claim pursuant to Rule 12(b)(6) is reviewed *de novo*. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The scope of review is "generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which [the Court of Appeals] may take judicial notice." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009), as amended (Feb. 10, 2009). The appellate court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B. Legal Framework for Dismissal Under Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

### C. The District Court's Taking Judicial Notice Of Store.hp.com Was In Error And Undermines The Entire Opinion

While Parziale will go through each element of his FDUTPA, CFAA, and trespass to chattels claim for this *de novo* review below, the District Court below based its opinion on language contained on store.hp.com and the position that Parziale relied on it when this position was factually erroneous and, as a result, the District Court's entire order is accordingly erroneous. In considering a 12(b)(6) motion, the Court accepts all complaint allegations as true, considers them as a whole, and draws all reasonable inferences in plaintiff's favor. *Association for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). While the Court generally does not consider materials outside of the complaint on a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "A court may consider evidence on which the complaint necessarily relies if: (1) the

---

[8] This recitation comes from the Order below. (Order, 1-ER-6–7).

complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Aledlah v. S-L Distribution Co., LLC*, No. 20-CV-00234-JSC, 2020 WL 2927980, at *3 (N.D. Cal. June 3, 2020) (citing *Marder*, *supra* 450 F.3d at 448 ).

HP requested the District Court take Judicial Notice of "(1) a historical snapshot of the HP store page for the OfficeJet Pro 7740 archived on the Wayback Machine, (2) photos of the OfficeJet Pro 7740 box and packaging, and (3) a copy of the HP support page." (1-ER-6).

The Court correctly found that second request concerning the "box" HP requested the District Court take judicial notice of and the information contained thereon conflicted with the box and its representations as pled by Parziale and thus represented a disputed issue not properly decided at the motion to dismiss stage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.") *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). Parziale pled that the box stated "Please use genuine HP ink cartridges for best results" and that this was the "only statement on the packaging" and that there were no disclosures on the box indicating that HP would or could block customers from using non-HP ink

cartridges.  (SAC, 2-ER-153–54, 160).  By contrast, HP sought to request judicial notice for a box that included a "Cartridge Warning Label" advising that cartridges with non-HP chips may not work with the printer.  (2-ER-137).  Because this conflicts with the well pled allegations, the Request for Judicial Notice as to Exhibit B was and is properly denied.

The District Court similarly found that the third request concerning the support page was irrelevant in light of Parziale's express allegation that he "did not visit or otherwise rely on any information contained within support.hp.com." (SAC, 2-ER-155).  Accordingly, the Support Page is not central to Parziale's claim and the request for judicial notice was and is properly denied.  *Aledlah*, *supra* 2020 WL 2927980, at *3 (N.D. Cal. June 3, 2020) (citing *Marder*, *supra* 450 F.3d at 448).

The District Court incorrectly found, however, that the first request concerning a Wayback Machine for store.hp.com was properly judicially noticeable because Parziale "relied on" the information contained on the store page in deciding to make his purchase.  Parziale pled that his online purchase of the HP Printer was from Amazon.com, not store.hp.com, which is a completely separate website.  (SAC, 2-ER-152).  Accordingly, the Second Amended Complaint neither refers to the website and the website is not only not central to Parziale's claim—it has no relevance at all.  *Aledlah*, *supra* 2020 WL 2927980, at *3 (N.D. Cal. June 3,

2020) (citing *Marder*, *supra* 450 F.3d at 448). HP's request for judicial notice as to Exhibit 1 should thus be denied and any statements contained therein should be ignored. The District Court did not do so and instead ruled based on its erroneous factual conclusion that Parziale had seen the statement "Dynamic security enabled printer. Only intended to be used with cartridges using an HP original chip. Cartridges using a non-HP chip may not work, and those that work today may not work in the future. http://www.hp.com/go/learnaboutsupplies." (Order, 1-ER-4). As a result, its legal analysis dismissing the FDUTPA, CFAA, and trespass to chattels claim is flawed as discussed below and creates an error which warrants reversal on its own with an order to conduct the analysis again under the right facts.

### D. Parziale Has Adequately Stated A Claim Under FDUTPA

While the District Court only dismissed Parziale's FDUTPA claim on the basis that the injury could have reasonably been avoided, Parziale assesses the full claim for purposes of this appeal. The Florida Deceptive and Unfair Trade Practices Act is to be liberally construed to protect consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in conduct of any trade or commerce. *Hodges v. Harrison*, 372 F.Supp.3d 1342, 1351 (S.D. Fla. 2019). A consumer claim for damages under the FDUTPA has three elements: (1) a deceptive act **or** unfair

practice; (2) causation; and (3) actual damages. *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012); *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F.Supp.2d 1218 (S.D. Fla.2013).

The FDUTPA prohibits "unfair" business practices, which is broadly defined to include "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." F.S.A. § 501.204. Courts must liberally construe the FDUTPA. *Lombardo v. Johnson & Johnson Consumer Companies, In*c., 2015 WL 5025466 at *3 (S.D. Fla. Aug. 12, 2015). A FDUTPA claim is distinguishable from common law fraud. *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F.Supp.2d 1314, 1327 (M.D. Florida, 2007).

The FDUTPA is extremely broad and the statute is designed to protect the consuming public from those who engage in deceptive or unfair trade practices. *Pincus v. Speedpay, Inc.*, 161 F.Supp.3d 1150, 1157 (S.D. Fla. 2015); *Day v. Le–Jo Enterprises, Inc*., 521 So.2d 175, 178 (Fla. Dist. Ct. App. 1988). The legislature enacted FDUTPA to protect not only the rights of litigants, but also the rights of the consuming public at large. *S.D.S. Autos, Inc. v. Chrzanowski*, 976 So.2d 600, 607 (Fla. Dist. Ct. App. 2007) (citing *Davis v. Powertel, Inc*., 776 So.2d 971, 975 (Fla. Dist. Ct. App. 2000)) (observing that the Act authorizes declaratory and

injunctive relief "even if those remedies might not benefit the individual consumers who filed the suit").

A "unfair practice" is simply one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Martorella*, *supra* 931 F.Supp.2d at 1223-24; *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. Dist. Ct. App. 2001). Unfair acts include but are not limited to conduct that is declared and interpreted as unfair under the FTC Act. F.S.A. § 501.204(b). A practice is "deceptive" when consumer is forced to bare larger risk than expected, whereas a practice is "unfair" when consumer is forced to bear a larger risk than an efficient market would require. *American Financial Services Ass'n v. F.T.C.*, 767 F.2d 957, 979 fn. 28. (D.C. Cir. 1985).

Stated otherwise, the FTC unfairness test requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. Dist. Ct. App. 2014) (adopting the FTC Policy Statement on Unfairness for the purposes of establishing unfairness under FDUTPA); *Drum v. San Fernando Valley Bar Assn.*, 182 Cal.App.4th 247, 257 (2010); *Fed. Trade Comm'n v. Vylah Tec, LLC*, No. 17-cv-228-PAM-MRM,

2019 WL 722085, at *6 (M.D. Fla. Jan. 9, 2019) (stating the requirements for a FDUTPA claim "mirror[] the requirements of Section 5 of the FTC Act"); *Casey*, *supra* 2015 WL 10096084 at *6 (same).

Parziale here has alleged that HP engaged in unfair practices in violation of FDUTPA by:

- HP misleading consumers by intentionally omitting highly relevant material information at the point of sale regarding future restrictions that HP would place on the use of Class Printers, namely a firmware update that would render incompatible any third party or refill ink cartridges with Class Printers;

- HP invading consumers' Class Printers without notice or authorization, and substantially decreased the value of the products, after the point of sale, by installing permanent firmware updates onto the units that rendered the units less functional and less valuable than they were prior to that time;

- HP invading consumers' Class Printers without notice or authorization, and rendered existing third party and refill ink cartridges that Class Members had previously purchased and owned valueless;

- HP harming competition and raised the cost of owning printers amongst consumers in the marketplace by artificially restricting free

choice with respect to aftermarket products. HP forcing existing customers who sunk a high upfront cost in a printer (a barrier to entry for a consumer who wishes to purchase a competitor printer but is now stuck), and now restricted to continuing to use that printer and HP brand ink cartridges at an artificially elevated variable cost due to barriers preventing them from altering their otherwise free choice. By tying a fixed base product (printers) to variable products (ink cartridges) in this way, when combined with undisclosed deceptive conduct of altering the base product without authorization, HP has harmed competition and consumers.

(SAC, 2-ER-173–74). Under the Section 5 framework supported by his well-pled allegations, Parziale satisfies all three prongs in his Second Amended Complaint.

### 1. Parziale Has Pled An Injury That Is Substantial

Parziale has pled both actual monetary harm and monetary harm from the dimunition of the value of his Printers which constitutes a substantial injury under the Section 5 test. "In most cases a substantial injury involves monetary harm, as when sellers coerce consumers into purchasing unwanted goods." *Porsche Cars N. Am., Inc*, *supra* 140 So. 3d at 1096 (excerpting the FTC Policy Statement on Unfairness).

Parziale suffered harm to his personal property when HP rendered his printers unusable. (SAC, 2-ER-154, 159–62, 167, 169–70, 173–75). Parziale was in possession of nine refill cartridges at the time of the firmware update, all of which have been rendered useless as well. (*Id*. at 2-ER-162–63). Plaintiff now has to buy more expensive HP brand replacement ink cartridges in order to use his printer. (*Id*. at 2-ER-162–64, 167). The cost of replacement cartridges can be substantial, which is why printer owners often buy more affordable competing cartridges. (*Id*. at 2-ER-163). The altered printers also suffered a diminution in value. (*Id*. at 2-ER-154, 159–62, 167, 169–70, 173–75); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-23 (2011) (holding that a plaintiff may show economic injury under the UCL from "hav[ing] a present or future property interest diminished.").

The District Court in analyzing these allegations on the Motion to Dismiss the First Amended Complaint found that Parziale had adequately pled a "substantial injury." *Parziale v. HP, Inc.*, *supra* 445 F. Supp. 3d at 446 (N.D. Cal. 2020) (citing *Porsche Cars N. Am., Inc*, *supra* 140 So. 3d at 1096). In the Order at issue, HP did not again challenge the Court's finding that there was a substantial injury. (Order, 1-ER-9). Because of the above cognizable harm, Parziale has adequately pled a substantial injury to satisfy the first factor of the test.

## 2. Parziale Has Pled A Lack Of Countervailing Benefits

Parziale has adequately pled that the injury caused by HP was not outweighed by any countervailing benefits to consumers or competition and thus satisfied the second prong of the FDUTPA Section 5 Test. As argued immediately above, Parziale suffered an injury by HP rendering obsolete the nine (9) printer cartridges he had purchased, requiring Parziale to buy significantly more expensive HP cartridges in the future, and devaluing his printers by disabling their ability to be used with non-HP cartridges which are cheaper. Parziale further specifically pled how the invasive update by HP did not provide a countervailing benefit:

- HP's unilateral and invasive decision to force the dynamic security firmware update on Class Printers does nothing to improve consumers experiences, as the printers used and worked successfully with and had quality printing from third party and refilled ink cartridges prior to the update.

- Defendant's dynamic security update does not provide any countervailing benefits to consumers as the only result is to restrict access to cartridges that had worked and had quality printing and were cheaper.

- There is no countervailing benefit as compared to the harm of forcing consumers to purchase more expensive ink cartridges and rendering already purchased ink cartridges worthless.

(SAC, 2-ER-162). Based on the above, the District Court found that Parziale had adequately alleged that "the harm caused by forcing consumers to purchase more expensive ink cartridges," and "by rendering their already purchased non-HP ink cartridges worthless" plausibly outweighs the benefits to consumers. (Order, 1-ER-10). This Court should similarly find that Parziale has met this low burden at the pleading stage, especially given the body of case law demonstrating that this analysis is more properly accomplished on a motion for summary judgment.

The cost-benefit analysis the FTC test calls for is not properly suited for resolution at the pleading stage. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1117 (N.D. Cal. 2015) (citing *In re iPhone Application Litigation, supra* 844 F.Supp.2d 1040); *see also Bias v. Wells Fargo & Co*., 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013) ("the Court cannot find as a matter of law that the supposed benefits outweigh Plaintiffs' injuries."). Instead, it is more appropriately handled on a Motion for Summary Judgment or at trial due to its fact-intensive nature. *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000) ("[The] defendant should be made to present its side of the story. If, as will often be the case, the utility of the conduct clearly justifies the practice, no more than a simple motion for summary judgment would be called for."); *see also Klein v. Chevron USA, Inc.*, 137 Cal. Rptr. 3d 293, 321 (Ct. App. 2012) (declining to conclude, absent factual development, that harms were outweighed by benefits). Accordingly, Parziale has

adequately pled the second factor of the Section 5 Test regarding the lack of countervailing benefits at this stage.

### 3. Parziale And Consumers Could Not Reasonably Avoid The Harm Caused By HP

Turning to the third factor and only factor that the District Court found Parziale failed to meet, Parziale could not have reasonably avoided the injury he suffered because HP denied him a free and informed choice by failing to inform him and other consumers that it intended to intentionally disable the ability of the Class Printers to use refilled and remanufactured cartridges via a secret forced firmware update.  An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it." *Orkin Exterm. Co., Inc. v. FTC*, 849 F.2d 1354, 1365–66 (11th Cir.1988).  This third factor is geared to "halt some form of seller behavior that unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking." *In the Matter of Int'l Harvester Co.*, 104 F.T.C. 949, 1073-74 (1984).  In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice. *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010) (citing *Amer. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 976 (D.C. Cir. 1985)).  In *Orkin*, the Court noted that there is "anticipatory avoidance," based on representations made prior to the sale, and "subsequent mitigation" based

on actions that could be taken to mitigate the harm once it occurs. *Orkin Exterm. Co., Inc.*, *supra* 849 F.2d at 1365.

It is not contested that there could be no subsequent mitigation based on the harm suffered after HP pushed its firmware update without notice and instead the inquiry is focused on whether there is anticipatory avoidance—that is, whether Parziale and consumers could have reasonably predicted this harm and chosen not to purchase the printers as a result. Again, this harm is HP implementing and making an undisclosed firmware push using its dynamic security technology that rendered HP Printers incompatible with third party ink cartridges and causing them to display inaccurate messages that the ink cartridges were "depleted" or otherwise unusable. (SAC, 2-ER-149, 153–59, 161–67, 174, 177). Accordingly, the inquiry is whether consumers had reason to anticipate that HP would implement and force a firmware update without notice or consent at the time of purchase. Under both the actual pleadings at issue and the broader statement improperly considered by the District Court, the answer to this inquiry is no.

### a. The Only Disclosure To Parziale Was To "Please use HP ink cartridges for best results" Which Does Not Allow A Consumer To Make A Free And Informed Decision

Because the Request for Judicial Notice should be rejected in full for the reasons discussed above, the only relevant statements at this Motion to Dismiss

stage are those contained with Parziale's Second Amended Complaint. Accordingly, nowhere at the time of purchase for either printer did Parziale see any representation by HP that Parziale would only be able to use HP brand ink-cartridges. (SAC, 2-ER-153). The only statement on the packaging stated "Please use HP ink cartridges for best results." (*Id.*). This statement did not lead Parziale to believe that he would be able <u>only</u> to use HP brand ink, and in fact gave the opposite impression to reasonable consumers and to Parziale—that HP ink would give the *best* results, but not the *exclusive* results. (*Id.*) (emphasis in original). HP made similar statements on its website, which led reasonable consumers to believe that HP brand ink was not the only alternative, merely the one HP believed was the best alternative. (SAC, 2-ER-154–59).

The absolute lack of disclosure regarding HP's intention to unilaterally and secretly disable the ability to use third-party ink means that a consumer did not "have reason to anticipate the impending harm and the means to avoid it." *Orkin Exterm. Co., Inc.*, *supra* 849 F.2d at 1365–66. If HP wants to significantly devalue its Printers after selling them to consumers through a malicious code injection, it needs to disclose to consumers at the time of purchase that it reserves the right to do so in order to provide them a free and informed decision about whether they want to conduct business with HP. Because of the absolute lack of any such disclosure as pled in the Second Amended Complaint, Parziale has demonstrated

that this was not a harm a consumer could reasonably have avoided and thus stated a FDUTPA claim.

### b. Even The Language Improperly Considered By The District Court Did Not Allow A Consumer To Make A Free And Informed Decision

While this Court should find that the District Court improperly considered the statements from store.hp.com which Parziale did not even plead to have visited as discussed above, even those statements do not adequately disclose the harm caused by HP such that it still was not one consumers could have reasonably avoided. This statement, again, was "Dynamic security enabled printer. Only intended to be used with cartridges using an HP original chip. Cartridges using a non-HP chip may not work, and those that work today may not work in the future. http://www.hp.com/go/learnaboutsupplies." (Order, 1-ER-4 (citing Declaration of Ilissa Samplin, Ex. A, 2-ER-118)).

Again, the test of whether the injury is reasonably avoidable is if the disclosures made permit a consumer "to anticipate the impending harm and the means to avoid it." *Orkin Exterm. Co., Inc.*, *supra* 849 F.2d 1354 (11th Cir.1988). The first step of the inquiry is into what a reasonable consumer would understand this disclosure to mean. "Dynamic security enabled printer" in the absence of any other information or disclosure does not inform a consumer that HP is maintaining the ability and right to unilaterally push undisclosed firmware updates onto its

Printers to render them incompatible with third-party ink cartridges.  While HP is likely to argue that a reasonable consumer would be expected to conduct further research beyond the printed text to determine what 'dynamic security" means, such a notion directly goes against the nature of the test which requires a seller to disclose the relevant risks at the time of purchase in order to permit a consumer to make a free and informed decision.

In the recent case of *Anderson v. Apple Inc.*, No. 3:20-CV-02328-WHO, 2020 WL 6710101 (N.D. Cal. Nov. 16, 2020), the court considered whether the use of the terms "Gigabit-class LTE" and "LTE advanced" adequately conveyed that one device used a 2x2 MIMO antenna while the other used a superior 4x4 MIMO antenna in the context of the sufficiency of a disclosure on an analogous California Unfair Competition Claim under Cal. Bus. & Prof. C. §§ 17200.  *Id.* at *10.  The court found that these two terms did not adequately disclose this distinction and dismissed Apple's arguments that the consumer was required to conduct further inquiry beyond the presented materials to attempt to discern what the terms meant. *Id.*

Here, similar to *Anderson*, the proffered statement by HP does not inform a consumer about what the technical term "dynamic security" is at the point of sale and thus denies the consumer the ability to make an informed choice.  "Dynamic security" is a system by which HP can push undisclosed firmware updates onto

consumers printers without informing them or getting their consent to push the specific update onto the printer. (SAC, 2-ER-167, 174, 177). Because the disclosure is silent as to what "dynamic security" means, a consumer is not put on notice about what "dynamic security" is such that they are unable to make a free and informed decision about whether he or she wants to purchase a printer that features such system.

Further, even if a consumer were to know what dynamic security is, the statement at issue does not provide a conspicuous disclosure to a consumer that HP intends to use "dynamic security" to push a firmware update to render its Printers incompatible with third-party ink cartridges. Instead, it nebulously informs the consumer that the printer has "[d]ynamic security enabled printer" and that "[c]artridges using a non-HP chip may not work, and those that work today may not work in the future." It does not finish the thought—that non-HP chip cartridges will not work in the future because HP will use "dynamic security" to implement a secret firmware update that will cause such issue. Instead, HP requires that the consumer speculate and infer that HP will use "dynamic security" for such purpose to devalue the printer.

When a company requires that a consumer complete addition steps to either speculate or infer the intent of the company, the company "unreasonably creates or takes advantage of an obstacle to the free exercise of consumer decisionmaking."

*In the Matter of Int'l Harvester Co.*, *supra* 104 F.T.C. at 1073-74. If HP wants to engage in such anti-competitive and harmful behavior, it need only warn consumers that it intends to engage in such behavior at the time of sale instead of springing it upon them after it is too late. Accordingly, even considering the improper disclosure considered by the District Court, the harm suffered was not one that a reasonable consumer could have avoided and Parziale has stated a claim under FDUTPA.

### E. Parziale Has Adequately Stated A Claim Under The CFAA

HP exceeded its authorization when it used "dynamic security" to damage Parziale's printers in violation of the CFAA. The District Court's ruling to the contrary was based on the wrongly considered store.hp.com disclosure.

The Computer Fraud and Abuse Act is a federal criminal statute that also authorizes civil actions for any person who suffers damage or loss by reason of a violation of the statute. 18 U.S.C. § 1030(g). "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (citing 18 U.S.C. 1030(a)(1)-(7) (2004)).

The CFAA imposes civil liability on a defendant who (1) knowingly or intentionally accesses a protected computer used in interstate commerce, (2) without authorization, or in excess of authorization, (3) causing at least $5,000 in damage over a one-year period. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (citing 18 U.S.C. § 1030(a)). 18 U.S.C. § 1030(a)(5)(A) further specifies a violation occurs whenever a defendant "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." This is the only section Parziale puts forth a claim under.

Parziale's CFAA allegations describe a theory of exceeding authorized access. *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010) (holding that for purposes of CFAA violations, "[a]ccess to a computer . . . may be exceeded if the purposes for which access has been given are exceeded."). To the extent HP had any authorized access to Parziale's printers, HP exceeded that access, in violation of the CFAA, when it froze them. (SAC, 2-ER-177). Based on the pleadings at issue, the only disclosure HP made at the time of sale was to "[p]lease use HP ink cartridges for best results" and included no disclosures regarding "dynamic security" or its intent to forcibly and secretly update the firmware on Parziale's printers to render them incompatible with third-party ink cartridges. (SAC, 2-ER-

153–59).  Such a disclosure does not create an authorization for HP to engage in the conduct at issue.

The Court in the published *San Miguel v. HP Inc.*, 317 F.Supp.3d 1075 (N.D. Cal. 2018) found that this exact fact pattern adequately pleads a claim under the CFAA.  In *San Miguel*, the Court found that the allegation that HP knowingly transmitted a firmware update via dynamic security and intentionally caused damage to printers stated a claim in combination with a lack of consent to the installation of the disabling firmware pled a cause of action under 18 U.S.C. § 1030(a)(5)(A).  *Id.* at 1085-86.  The key inquiry is whether the consumer specifically authorizes the program, information, code or command which intentionally causes damage to a protected computer.  *Id.*  Because of the secretive and automatic nature of "dynamic security" updates, HP does not collect authorization for these firmware updates prior to pushing them.  Accordingly, Parziale has adequately pled a claim under CFAA.[9]

Even considering the improper broader disclosure cited to by the District Court in its Order, HP still did not adequately warn about its intention with the

---

[9] The District Court in its order on HP's Motion to Dismiss the First Amended Complaint actually agreed with Parziale and found that Parziale's "allegations are sufficient" because he "alleges that HP knowingly transmitted the firmware update and intentionally caused damage by altering his printers' functionality in a way that devalued the printers.  (2-ER-199).

"dynamic security" firmware update so as to obtain authorization for such update. In *In re Apple & AT & TM Antitrust Litig.*, *supra* 596 F. Supp. 2d at 1308 (N.D. Cal. 2008), the Court found that even where plaintiffs had explicitly accepted an update, plaintiffs had still alleged a claim under the CFAA because they had "authorized a software update, not authorized damages to their iPhones" and that the "ambiguity surrounding Apple's warning and the fact that [p]laintiffs allege that some downloading of Version 1.1.1 was 'unsuspected'" failed to create authorization. The Court in *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018), *on reconsideration in part,* 386 F. Supp. 3d 1155 (N.D. Cal. 2019), similarly found the plaintiffs to have stated a claim under CFAA even where they had accepted an update because "[n]either the software update notification nor the software update release notes made any mention of [the] severe throttling effect," but rather, Apple intentionally concealed this potential effect."

As discussed *supra* I(D)(3)(b), the disclosure made by HP does not create an understanding in the consumer that HP intends to use "dynamic security" to forcibly and secretly update its Printers to render them incompatible with third-party ink cartridges after sale. Instead, it at best makes disjointed statements which require consumers to speculate and infer what HP's intentions are. Because it does not inform the consumer about what it intends to do, it cannot get authorization for

such action.  Such vague statements are similar to the "ambiguity surrounding

Apple's warning" present in *In re Apple & AT & TM Antitrust Litig.*, *supra* 596 F.

Supp. 2d at 1308, and thus similarly do not prevent Parziale from stating a valid

claim that HP exceeded its authority under 18 U.S.C. § 1030(a)(5)(A).[10]

### F.  Parziale Has Adequately Stated A Claim For Trespass To Chattels

Parziale's Trespass to Chattels claims dovetails with his CFAA arguments

and should be upheld for the same reasons—namely that HP exceeded its

authorization and even the wrongly considered expanded disclosure does not

adequately create notice to overcome this overreach.

"The essence of the cause of action for trespass is an 'unauthorized entry'

onto the land of another." *Miller v. Nat'l Broad. Co.*, 187 Cal.App.3d 1463, 1480

(1986).  "The California Supreme Court has held that the principles underlying the

tort apply to allegations of digital trespass."  *Intel Corp. v. Hamidi*, 30 Cal.4th

1342 (2003).  "[T]o prevail on a claim for trespass based on accessing a computer

system, the plaintiff must establish: (1) defendant intentionally and without

authorization interfered with plaintiff's possessory interest in the computer system;

---

[10] Even worse than the *Apple* cases, HP does not even obtain approval for an
update prior to its installation and instead, by default, forcibly and secretly installs
updates.

and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-70 (N.D. Cal. 2000)).

Parziale's trespass allegations mirror those relating to his CFAA claim. Parziale alleges that HP exceeded its authorized access to Parziale's printers when it activated a firmware update that disabled his printers. (SAC, 2-ER-177). Parziale further alleges that HP's conduct caused damage "by preventing the Class Printers from operating, by impairing the condition of these printers, by reducing the value of these printers, and by depriving [Parziale] and Class members of the use of these printers and of their non-HP ink cartridges for a substantial period of time." (SAC, 2-ER-178). HP argues that because it had authorized access, Parziale cannot claim that HP acted 'without authorization' for the purposes of a trespass claim. The District Court in its published opinion on response to HP's Motion to Dismiss the First Amended Complaint found such allegations adequately stated a claim.

"In *San Miguel*, the court held that similar allegations were sufficient to state a claim for digital trespass despite the fact that the defendant had allegedly only exceeded authorized access." *Parziale v. HP, Inc.*, *supra* 445 F. Supp. 3d at 450 (citing *San Miguel*, *supra* 317 F. Supp. 3d at 1088). "The Court similarly finds the allegations here sufficient to state a claim." *Id.* (citing *In re Apple & AT & TM Antitrust Litigation*, *supra* 596 F.Supp.2d at 1307 (plaintiff's consent to

install software update did not foreclose a trespass claim based on damage caused by that update) and *eBay*, *supra* 100 F.Supp.2d at 1070 (trespass claim cognizable because even if defendant's web crawlers were authorized to use eBay's system, the web crawlers exceeded the scope of any such consent when they began acting like robots by making repeated queries)).

The District Court ultimately disagreed with itself in its Order on HP's Motion to Dismiss the Second Amended Complaint based on the improperly considered store.hp.com disclosure. Given that such disclosure should be excluded, this Court should accordingly affirm the District Court's original order and find that Parziale has adequately stated a claim for trespass to chattels due to HP's exceeding its authorization.

Further, and again, even if the Court were to consider the broader disclosure, such a disclosure does not create authorization for the conduct HP engaged in because it does not describe the conduct HP intended to engage in. In *In re Apple & AT & TM Antitrust Litig.*, *supra* 596 F. Supp. 2d at 1306-1307, the court upheld a trespass claim where plaintiffs alleged that Apple issued a software update "deliberately and intentionally to destroy the iPhones" of certain consumers. Apple maintained that plaintiffs consented to the update because they downloaded it after being warned (in all-caps) that "applying this software update may result in your iPhone becoming permanently inoperable." *Id*. at 1306-07 (quoting motion

to dismiss).  The court rejected Apple's argument because even if the plaintiffs had nominally consented to the update, questions of fact existed regarding whether they were "not aware of what they were consenting to" and whether Apple's warning was insufficiently clear.[11]  *Id.* at 1307.

Just as Apple intentionally disseminated an electronic update that damaged its customers' personal property, so did HP.  And, because HP was unprivileged to do so, it committed an unlawful trespass.  HP does not enjoy unfettered authority to access Parziale's printers for any purpose, however destructive.  HP's conduct departs even from Apple's in the above case in that HP (a) pushed through its update instead of asking users to download it and (b) failed to warn users in advance.  Parziale did not consent to or authorize this abrupt interference. Therefore, HP's general ability to access printers furnishes no defense, especially given the nebulous nature of its supposed "warning" as discussed *supra* I(D)(3)(b). Accordingly, even if considering the improper broader disclosure, the Court should find that Parziale has stated a claim for trespass to chattels and reverse the District Court.

## CONCLUSIONF

---

[11] See also *In re Apple Inc. Device Performance Litig.*, supra 347 F. Supp. 3d at 455 (N.D. Cal. 2018), on reconsideration in part, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) (same).

For the foregoing reasons, the District Court erred in granting HP's Motion to Dismiss. Therefore, Parziale respectfully requests that this Court reverse the District Court ruling and order the District Court to reinstate Parziale's Class Action against HP.

Dated: January 13, 2021

Respectfully Submitted,

BY: /s/ Todd M. Friedman
TODD M. FRIEDMAN

ATTORNEYS FOR
APPELLANT

## STATEMENT OF RELATED CASES

Appellant is unaware of any related cases currently pending before this Court.

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. 32(a)(7)(c) AND CIRCUIT RULE 32-1

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1 that the attached Opening Brief for the Appellant John Parziale complies with the type-volume limitation of Fed. R. App. P. 32(a)(5) and (6) as it is proportionately spaced, has a typeface of 14 points, and contains 9,667 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: January 13, 2021                    Respectfully Submitted,


                                    BY: /s/ Todd M. Friedman
                                        TODD M. FRIEDMAN

                                        ATTORNEYS FOR
                                        APPELLANT

---

CERTIFICATE OF COMPLIANCE                              DOCKET NO. 20-17009

## CERTIFICATE OF SERVICE

I, Todd M. Friedman, certify that on January 14th, 2021, the Appellant's Opening Brief and Excerpts of Record were e-filed through the CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's EMC/ECF system. A copy of the e-filed documents were sent, via the EMC/ECF system:

GIBSON DUNN & CRUTCHER
Samuel Liversidge (SBN 180578)
E: sliversidge@gibsondunn.com
333 S. Grand Ave.
Los Angeles, CA 90071-3197
T: (213) 229-7000
F: (213) 229-7520

**LAW OFFICES OF TODD M. FRIEDMAN**

BY:   /s/ Todd M. Friedman
    Todd M. Friedman, Esq. (SBN 21675)
    21550 Oxnard St., Ste 780
    Woodland Hills, CA 91367
    Phone: (877) 206-4741
    Fax:  (866) 633-0228
    Email: tfriedman@toddflaw.com

CERTIFICATE OF SERVICE            Docket No. 20-17009